William Bryan HENRY, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 585,2002.

Supreme Court of Delaware.

Submitted: May 29, 2002.

Decided: Sept. 3, 2002.

---

**30.** *Jones,* 745 A.2d at 872 n. 78 (quoting *United States v. Johnson,* 7th Cir., 170 F.3d 708, 718 (1999)).

**31.** *Jones,* 745 A.2d at 872 n. 78.

Joseph A. Hurley, Wilmington, Delaware, for appellant.

Thomas E. Brown, Department of Justice, Wilmington, Delaware, for appellee.

BEFORE: VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

PER CURIAM:

The defendant-appellant, William Bryan Henry ("Henry"), was indicted on one count of Murder in the First Degree [1] and one count of Possession of a Firearm During the Commission of a Felony.[2] Following a jury trial in the Superior Court, he was convicted of both charges. The trial judge sentenced Henry to life in prison without parole.

In this direct appeal, Henry challenges his convictions on two grounds. First, he argues that the trial judge violated both

---

1. Del.Code Ann. tit. 11, § 636(a)(1) (2001).

2. Del.Code Ann. tit. 11, § 1447A.

his due process rights under the United States Constitution[3] and his rights under the applicable Delaware statute[4] in refusing his request to instruct the jury on the lesser included offense of Murder in the Second Degree. Henry contends that the evidence presented at trial provided a rational basis from which the jury could have acquitted him of Murder in the First Degree and convicted him of that lesser included offense and thus, required the trial judge to give the requested instruction. Second, Henry argues that the trial judge abused his discretion by permitting the State to present evidence of an out-of-court experiment.

We have concluded that the Superior Court violated both Henry's due process rights under the United States Constitution and his rights under the applicable Delaware statute in refusing to instruct the jury on the lesser included offense of Murder in the Second Degree.[5] The record reflects that Henry's testimony provided a rational basis from which the jury could acquit him of the charged offense and convict him of the lesser included offense of Murder in the Second Degree. Therefore, the trial judge was required to instruct the jury on at least that lesser included offense and to allow the jury to assess the credibility of Henry's testimonial evidence in determining his *mens rea*.[6] Accordingly, the judgments of the Superior Court must be reversed.

## Facts

On July 6, 1999, Henry shot his fiancée, Siobhan Canty ("Canty") three times and killed her in the small bathroom of the house they shared. The three bullets struck Canty's body in the head, chest, and back. The gunshots to the head and chest entered at downward angles, indicating that the shots were discharged at close range.

The following day Henry placed Canty's body into a suitcase and loaded it into the trunk of his car. He dumped the suitcase in an area off of Route 9, south of New Castle. The next day, July 8, 1999, Henry called his parents and asked them to come to his house. He told them that he thought he was having a nervous breakdown and wanted to see a psychiatrist.

Henry's parents attempted to admit him to the Delaware State Hospital. He was denied admission because of a gunshot wound to his foot. His parents took Henry to a hospital emergency room in Wilmington.

The hospital staff contacted the police regarding Henry's gunshot injury. Officer Donovan was dispatched to the hospital where he met Henry in a treatment room. Additional police officers were dispatched to Henry's home. With Henry's consent, the officers searched the residence. The police found a significant quantity of blood throughout the interior of the house and outside on the front steps and deck area.

---

3. *Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

4. Del.Code Ann. tit. 11, § 206(c).

5. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (independent state grounds).

6. Therefore, upon reaching this conclusion, the Court does not find it necessary to address Henry's second argument. Henry's objection to the State's experiment can be renewed at his next trial. The trial judge's decision to admit the results of the State's experiment into evidence during Henry's first trial shall not constitute the law of the case. Henry's objection that he did not have an opportunity to respond fully to the experiment because it took place during the trial may become moot in the event of a retrial.

The officers also discovered documents on a dining room table for two life insurance policies on Canty for one million dollars, with Henry as the beneficiary.

On July 16, 1999, a prison inmate work crew discovered a suitcase containing a human body. It was subsequently identified as Canty. Henry was charged with her murder.

At trial, Henry testified that during his three-year relationship with Canty she had physically and mentally abused him. He stated that on July 6, 1999 Canty had taken a shower and started yelling at him. According to Henry, when he entered the bathroom, Canty was standing with a handgun pointed at him. Henry attempted to wrestle the gun away from her.

Henry testified that "[they] got in a screaming match. [He] accidentally shot [himself] in the foot, and [he] got extremely upset and just a wave of emotion took over and [he] shot her." Henry testified that he did not intentionally kill Canty. He stated that in pulling the trigger "a total rage of emotions just came over [him], [he] had no control."

### Lesser Included Offense Instruction Denied

Henry requested the trial judge to instruct the jury on Murder in the Second Degree, as a lesser included offense of Murder in the First Degree. Henry requested that instruction on the ground that his testimony provided an evidentiary basis for the jury to find that his shooting

of Canty was reckless. In refusing to instruct the jury on Murder in the Second Degree, the trial judge stated "[t]hree different parts of the body within a very short period of time. It seems to me that reckless is absurd under those conditions. I'm not going to give it." [7]

### Henry's Contention

Henry concedes that the combination of his testimony, the autopsy evidence and the circumstantial evidence regarding the turbulent relationship of the couple and the financial benefit he received from her death supports the State's theory of an intentional murder having occurred. According to Henry, "[t]hat much is not in issue."

Nevertheless, Henry argues that he was entitled to have the jury instructed on the lesser included offense of Murder in the Second Degree. The basis for that argument is Henry's testimony at trial that he did not intentionally cause Canty's death, but that his actions were reckless due to his firing the gun at close range under the circumstances described in his testimony. This Court reviews *de novo* Henry's claim that there was a rational basis for instructing the jury on the lesser included offense of Murder in the Second Degree.[8]

### Lesser Included Offenses

"At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged." [9] That rule originally developed

---

7. The trial judge did instruct the jury with regard to Manslaughter, but not as a lesser included offense of Murder in the First Degree. The Manslaughter instruction was given because Henry asserted the affirmative defense of extreme emotional distress. The burden of proving the elements of that affirmative defense was upon Henry.

8. *Capano v. State*, 781 A.2d 556, 628 (Del. 2001); *see Zebroski v. State*, 715 A.2d 75, 82 (Del.1998); *Zimmerman v. State*, 628 A.2d 62, 66–67 (Del.1993).

9. *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (citing 2 M. Hale, *Pleas of the Crown* 301–02 (1736); 2 W. Hawkins, *Pleas of the Crown* 623 (6th ed. 1787); 1 J. Chitty, *Criminal Law* 250 (5th Am.

as "an aid to the prosecution in cases in which [its evidence] failed to establish some element of the crime charged."[10] Such instructions provide the jury with a less dramatic alternative than the sharp choice between conviction of the offense charged and acquittal.

It has long been recognized, however, that jury instructions on lesser included offenses can also be beneficial to the defendant. The United States Supreme Court has recognized that "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard."[11] This fundamental principle was developed in recognition that the extension of the full benefit of the concept of reasonable doubt may be compromised if the jury had no alternative but to set free a defendant accused of a particularly heinous crime.[12]

█ A defendant is entitled to have the jury instructed on a lesser included offense if four criteria are satisfied.[13] First, the defendant must make a proper request.[14] Second, the lesser included offense must contain some but not all of the elements of the charged offense.[15] Third, the elements differentiating the two offenses must be in dispute.[16] Fourth, there must be some evidence that would allow the jury to rationally acquit the defendant on the greater charge and convict on the lesser charge.[17]

The United States Supreme Court has held that the due process protections of the United States Constitution require an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.[18] The Delaware General Assembly has also provided for that protection by statute.[19] The parameters of those protections have been addressed many times by this Court.[20]

### Issue Presented

In this case there is no dispute that Henry satisfied the first three criteria for having the jury instructed on the lesser included offense. Therefore, in determining whether Henry was entitled to an instruction on Murder in the Second Degree, this Court must decide whether the record evidence in this case provided a rational basis for acquitting Henry of Murder in the First Degree and convicting him instead of Murder in the Second Degree.[21] The difference between these degrees of homicide is the requisite *mens rea* of the

ed. 1847); T. Starkie, *Treatise on Criminal Pleading* 351–52 (2d ed. 1822)).

10. *Id.* (citing 2 C. Wright, *Federal Practice and Procedure* § 515, n. 54 (1969)).

11. *Id.* at 634, 100 S.Ct. 2382.

12. *Chao v. State*, 604 A.2d 1351, 1359 (Del. 1992).

13. *See United States v. Humphrey*, 208 F.3d 1190, 1206 (10th Cir.2000); *United States v. Yazzie*, 188 F.3d 1178, 1185 (10th Cir.1999).

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

18. *Beck v. Alabama*, 447 U.S. at 635–38, 100 S.Ct. 2382; *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

19. Del.Code Ann. tit. 11, § 206(c).

20. *See, e.g., Capano v. State*, 781 A.2d 556 (Del.2001).

21. *Zebroski v. State*, 715 A.2d 75, 82 (Del. 1998).

defendant.[22] Title 11, section 635 defines Murder in the Second Degree as "recklessly caus[ing] the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life." [23]

■ As a general rule, a defendant is entitled to an instruction on a lesser included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." [24] This requirement usually is satisfied by the presentation of conflicting testimony on the element distinguishing the greater offense from the lesser offense.[25] "[A] defendant is entitled to an instruction on a lesser included offense if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be." [26]

### Jury Decides Credibility

■ Henry asserts that the jury could have held him responsible for the reckless killing of Canty in view of the unknown sequence of the shooting. He contends the jury could infer from his testimony that he fired the gun wildly in the bathroom. In refusing to instruct the jury on Murder in the Second Degree, the trial judge stated, "Three different parts of the body within a very short period of time. It seems to me that reckless is absurd under those conditions. I'm not going to give it."

More than one hundred years ago, in *Stevenson v. United States*, the United States Supreme Court addressed the question presented by Henry in this case:

> The ruling of the trial judge, in effect, was to say that, as matter of law, there was nothing in all this evidence, if true, which would permit the jury to find that the [defendant], when he fired his [gun], was so much under the influence of sudden passion, caused by these circumstances and by this [confrontation], as not to have been actuated by that malice which the law defines as a necessary ingredient in the crime of murder.
>
> . . . .
>
> . . . Whether such a state of mind existed in this case, and whether the [defendant] fired the shot under the influence of passion, and without malice, cannot be properly regarded as a question of law.[27]

■ Despite the trial judge's belief that Henry's contention of recklessness was "absurd," it is well settled that the jury is the sole judge of the credibility of witnesses and is responsible for resolving conflicts in the testimony.[28] In ruling upon a request to instruct the jury on a lesser included offense, the trial judge "must give full credence to [the] defendant's testimony." [29] The trial judge may

---

**22.** *See United States v. Wood,* 207 F.3d 1222, 1228 (10th Cir.2000).

**23.** Title 11, section 231(c) defines "recklessly" as "when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct."

**24.** *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *see also Beck v. Alabama,* 447 U.S. 625, 635, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

**25.** *See Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

**26.** *United States v. Humphrey,* 208 F.3d 1190, 1207–08 (10th Cir.2000) (citing *United States v. Thornton,* 746 F.2d 39, 47 (D.C.Cir.1984)).

**27.** *Stevenson v. United States,* 162 U.S. 313, 321, 322–23, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

**28.** *Chao v. State,* 604 A.2d 1351, 1363 (Del. 1992).

**29.** *United States v. Brown,* 287 F.3d 965, 974 (10th Cir.2002).

not intrude upon the province of the jury "which may find credibility in testimony that the judge may consider completely overborne by the simply overwhelming evidence of the prosecutor." [30] As the United States Supreme Court held in *Stevenson:*

> A judge may be entirely satisfied, from the whole evidence in the case, that the person doing the killing was actuated by malice; that he was not in any such passion as to lower the grade of the crime from murder to manslaughter by reason of any absence of malice; and yet, if there be any evidence fairly tending to bear upon the issue of [a lesser included offense], it is the province of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder or [the lesser included offense]. [31]

Henry's testimony presented evidence from which the jury could find the elements of the lesser included offense of Murder in the Second Degree. The conclusion that the United States Supreme Court reached a century ago in *Stevenson* is equally applicable in Henry's case:

> The [defendant] may have been guilty of murder. There was certainly sufficient evidence on that issue to render it necessary to submit it to the jury. We have no power and no inclination to pass upon that question of fact. We only decide that the question as to the grade of the crime, whether [first degree] murder or [second degree murder], should have been submitted to the jury.... [32]

Similarly, based on the evidence presented in the record, the trial judge was required to instruct the jury on the lesser included offense of Murder in the Second Degree. [33] A defendant is entitled to a lesser included offense instruction even if it "depends on an inference of a state of facts that is ascertained by believing defendant as to part of his testimony and [State's] witnesses on the other points in dispute." [34] The weight of the evidence is for the jury to decide. [35]

### Conclusion

We hold that the trial judge erred in taking the issue of Henry's *mens rea* away from the jury by refusing to instruct on the lesser included offense of Murder in the Second Degree. [36] That error resulted in a violation of Henry's due process rights under the United States Constitution [37] and his rights under the applicable Delaware statute. [38] The judgments of the Superior Court are reversed. This matter is remanded for a new trial in accordance

**30.** *United States v. Humphrey*, 208 F.3d 1190, 1208 (10th Cir.2000) (citing *Belton v. United States*, 382 F.2d 150, 155 (D.C.Cir.1967)).

**31.** *Stevenson v. United States*, 162 U.S. at 323, 16 S.Ct. 839.

**32.** *Id.*

**33.** *See Burrell v. State*, 766 A.2d 19 (Del. 2000); *Zebroski v. State*, 715 A.2d 75 (Del. 1998).

**34.** *United States v. Brown*, 287 F.3d at 974 (citing *United States v. Humphrey*, 208 F.3d at 1207–08).

**35.** *See Ward v. State*, 575 A.2d 1156, 1159 (Del.1990); *Gates v. State*, 424 A.2d 18, 21–22 (Del.1980).

**36.** *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *see United States v. Begay*, 833 F.2d 900, 902 (10th Cir. 1987) (quoting *United States v. Iron Shield*, 697 F.2d 845, 847–48 (8th Cir.1983)).

**37.** *Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

**38.** Del.Code Ann. tit. 11, § 206(c) (2001).

with this opinion.[39]

---

**39.** Henry asserts that he did not request an instruction on the lesser included offenses of Manslaughter and Criminally Negligent Homicide after the trial judge denied his request for an instruction on Murder in the Second Degree. Whether there is an evidentiary basis for either of those instructions should be decided by the trial judge in the first instance, if such requests are made at Henry's next trial.