

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00227-CR

---

ABEL GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 379th District Court
Bexar County, Texas
Trial Court No. 2020CR5334, Honorable Ron Rangel, Presiding

---

February 27, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Abel Garcia, was convicted by a jury of murder, enhanced by a prior felony conviction.[1]  He was sentenced to sixty years'

---

[1] TEX. PENAL CODE ANN. §§ 19.02(b), 12.42(c)(1).

confinement.  By a sole issue, he maintains the State failed to disprove self-defense beyond a reasonable doubt.[2]  We affirm.

## BACKGROUND

The victim was on parole and had been living with his sister, her son, and other unrelated individuals following his release.  He befriended Appellant, who was homeless, and provided him with food and clean clothes.  He did not, however, want Appellant inside his sister's house when he was not present.

Appellant was a tattoo artist and the victim wanted to help him with his craft.  He gifted him tattoo machines and other equipment for tattooing.  According to the victim's sister, Appellant was "happy" and "teary-eyed" with the victim's generosity.  They ate dinner together and afterwards Appellant tattooed the victim and his sister.

The next morning, while the victim's sister was in her bedroom, she heard a noise and found Appellant sitting on her porch shaking from the cold.  She let him sit inside the house even though the victim was not home.  When the victim returned, he was upset that Appellant was inside the house.  He and Appellant eventually left.

Later that morning, the victim returned home and was extremely upset.  He told his sister Appellant had stolen his favorite knife—a silver knife—after the kindness he had shown him.  The victim's sister told the victim not to associate with Appellant anymore.

---

[2] Originally appealed to the Fourth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001.  Should a conflict exist between precedent of the Fourth Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

Despite the warning, when Appellant knocked on the door later that morning, the victim let him inside. The sister became upset and went to sit on the couch while her brother and Appellant spoke. She claimed Appellant wanted her brother to help him shoot up heroin. They retreated to the victim's bathroom.

When they exited the bathroom, the victim's sister noticed Appellant was wearing a belt clip to the knife he had stolen from the victim. She offered him a different knife if he would return the one he stole. During their conversation, a good friend of the victim's came to the house. The friend was visibly upset and wanted to speak with the victim. He and the victim went to the kitchen to discuss why he was so upset. Appellant interrupted their conversation several times and the victim repeatedly told him to go sit down while he spoke with his other friend. Appellant complied and sat down next to the victim's sister. He later returned to the kitchen and interrupted the victim and his friend again.

According to the victim's sister, after Appellant's last interruption, she saw blood on the kitchen floor and Appellant holding a knife in his hand. The friend the victim had been speaking with ran out of the house and the victim's sister went to check on the victim. Appellant tried to stop her and said, "[y]eah, I did it, and what?" She pushed Appellant away and found the victim with blood gushing from his neck. He collapsed in her arms. Appellant fled the scene.

The sister testified she was screaming "psycho loud" and her son, who had been upstairs, came downstairs and called police. The victim eventually died in his sister's arms.

During the investigation, numerous witness statements were taken, and all witnesses named Appellant as the suspect. A warrant was obtained, and Appellant was arrested the next day.

During his interview with a detective, Appellant confessed to stabbing the victim but claimed he acted in self-defense. He maintained the victim grabbed a kitchen knife off the counter.[3] He told the detective, "I had to defend myself one way or another. It was him or me." He admitted he "stuck" the victim "in the neck" and ran away because he was scared. He denied having any intent to hurt anyone but considered himself a target. He believed the victim was a member of the Mexican Mafia out to get him.

Appellant did not testify until the punishment phase. His videotaped confession, however, was introduced during a detective's testimony in the guilt/innocence phase. The jury charge included a self-defense instruction. The jury rejected Appellant's claim of self-defense and found him guilty of murder.

**APPLICABLE LAW—SELF DEFENSE**

Self-defense is a justification defense. *Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011). "[A] person is justified in using force against another when and to the degree the actor believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." *See* TEX. PENAL CODE ANN. § 9.31(a). *See also Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018). "Reasonable

---

[3] Later, Appellant claimed the victim pulled a knife from his pocket and unlocked it.

4

belief" is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.  TEX. PENAL CODE ANN. § 1.07(a)(42).

Self-defense is a confession and avoidance defense because it requires the defendant to admit to his otherwise illegal conduct.  *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020); *Ayala v. State*, No. 04-19-00593-CR, 2020 Tex. App. LEXIS 7675, at *6 (Tex. App.—San Antonio Sept. 23, 2020, no pet.) (mem. op., not designated for publication).  It is a fact issue to be determined by a jury and "a jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Benevento v. State*, No. 04-21-00483-CR, 2023 Tex. App. LEXIS 1076, at *13 (Tex. App.—San Antonio Feb. 22, 2023, no pet.) (mem. op., not designated for publication).

A defendant claiming self-defense has the initial burden to produce evidence supporting it, while the State has the burden to disprove it.  *Braughton*, 569 S.W.3d at 608.  The State's burden does not, however, require the production of evidence; rather, only that it proved its case beyond a reasonable doubt.  *Id.*

## STANDARD OF REVIEW

A reviewing court views the evidence to support a jury's rejection of self-defense under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Borton v. State*, No. 04-22-00255-CR, 2023 Tex. App. LEXIS 6760, at *14 (Tex. App.—San Antonio Aug. 30, 2023, no pet.) (mem. op., not designated for publication).  In resolving the sufficiency of the evidence of a self-defense claim, a court does not look to whether the State presented evidence which refuted self-defense; rather the reviewing court determines whether after viewing all the evidence in the light most favorable to the

5

prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have rejected the claim of self-defense beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

## ANALYSIS

By his sole issue, Appellant contends the State failed to disprove self-defense beyond a reasonable doubt. He asserts the jury acted irrationally in reaching its verdict. We disagree.

The State was required to prove the elements of murder beyond a reasonable doubt. The victim's sister was not an eyewitness to the stabbing. She saw a large amount of blood on the floor and went to the kitchen where she saw Appellant holding a knife and her brother bleeding from his neck.[4]

Although the evidence showed there was a knife with a black handle and red tape on the kitchen counter within the victim's reach, the testimony established that knife was used to cut food and there was no evidence the victim had used it to threaten Appellant. By his own testimony, Appellant claimed the victim took a knife out of his pocket and unlocked it, but no such knife was recovered on the victim.

Appellant's version of events is some evidence he was justified in using deadly force; however, there was no other evidence supporting his version that the victim was using or attempting to use unlawful deadly force against Appellant that would have

---

[4] The defense theorized the victim's other friend who had been in the kitchen and had run out of the house could have committed the murder, but he was ruled out as a suspect.

6

justified the use of deadly force. Appellant did not have any injuries or defensive wounds on him. The evidence negated that at the time of the stabbing, the victim and Appellant were arguing or fighting. No weapons of any kind were found on the victim. The detective testified Appellant was the aggressor. *See generally Allgood v. State*, No. 04-11-00358-CR, 2012 Tex. App. LEXIS 7232, at *10–12 (Tex. App.—San Antonio Aug. 29, 2012, pet. ref'd) (mem. op., not designated for publication) (upholding jury's rejection of self-defense theory even when defendant produced some evidence to support self-defense).

The medical examiner testified the victim had three sharp injuries to his body. One was on the right side of his neck which resulted in his death and two other injuries were on his hands. She referred to the hand injuries as "defensive-type injuries" which could have come from putting his hands up to protect himself or to grab the knife from Appellant.

Contrary to Appellant's theory the victim was trying to kill him, the evidence showed the victim and his sister befriended him, fed him, and sheltered him from the cold. The victim also bought him the goods needed to begin a tattooing business. There was no evidence other than Appellant's confession to show the victim was in possession of a knife or weapon to justify Appellant's use of deadly force. Appellant claimed the victim threatened him with a kitchen knife but then claimed he took a knife out of his pocket and unlocked it. But no weapon was found on the victim. Appellant admitted he stabbed the victim and ran away because he was scared.[5]

---

[5] A jury may draw an inference of guilt from an accused fleeing the scene. *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).

7

The evidence also casts doubt on Appellant's assertion the victim was a member of the Mexican Mafia out to get him. An expert witness testified there was no evidence the victim was a member of the Mexican Mafia or any other gang.

To prevail, Appellant was required to show he reasonably believed, as an ordinary and prudent person would have, that deadly force was immediately necessary to protect himself against the victim's use or attempted use of unlawful deadly force while they were talking in the kitchen. The only evidence of alleged self-defense came from Appellant's videotaped confession during his interview with the Detective. He admitted stabbing the victim because he feared for his life. There was, however, no other evidence to support a reasonable belief that Appellant needed to protect himself from the victim.

The jury was presented with conflicting versions of the events that led to the victim's death. As the sole judge of the weight and credibility of the witnesses, the jury was free to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume the jury resolved any conflicting inferences in favor of the verdict. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). It was within the jury's province to accept or reject the defensive evidence. *Braughton*, 569 S.W.3d at 609; *Greenwood v. State*, No. 04-21-00313-CR, 2023 Tex. App. LEXIS 1470, at *13 (Tex. App.—San Antonio March 8, 2023, no pet.) (mem. op., not designated for publication).

Each fact need not point directly and independently to the guilt of the accused, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Alexander*

8

*v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)).  Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Appellant's theory was a credibility issue for the jury to resolve and did so against him.  We conclude the State presented sufficient evidence for a rational jury to have found the essential elements of murder beyond a reasonable doubt and to reject Appellant's claim of self-defense beyond a reasonable doubt.  The jury did not act irrationally in reaching its verdict.  Appellant's sole issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Do not publish.

9